# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

## No. ACM S32783

———————————

### UNITED STATES
*Appellee*

**v.**

### Dominic L. ATENCIO
Airman (E-2), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 20 December 2024

———————————

*Military Judge*: Brian M. Thompson.

*Sentence*: Sentence adjudged 7 December 2023 by SpCM convened at Kirtland Air Force Base, New Mexico. Sentence entered by military judge on 9 April 2024: Bad-conduct discharge, confinement for 54 days, reduction to E-1, and a reprimand.

*For Appellant*: Major Nicole J. Herbers, USAF.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Mary Ellen Payne, USAF.

Before RICHARDSON, MENDELSON, and MASON, *Appellate Military Judges*.

Judge MENDELSON delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge MASON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

MENDELSON, Judge:

At a special court-martial, a military judge convicted Appellant, consistent with his pleas and pursuant to a plea agreement, of one specification of absence without leave, two specifications of willfully disobeying a superior commissioned officer, and four specifications of wrongful use of a controlled substance, in violation of Articles 86, 90, and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 890, 912a, respectively.[1,2] The military judge sentenced Appellant, within the agreed-upon sentencing parameters of the plea agreement, to a bad-conduct discharge, confinement for 54 days, reduction to the grade of E-1, and a reprimand. The military judge awarded Appellant day-for-day credit for each of the 54 days Appellant spent in pretrial confinement pending trial. The convening authority took no action on the findings or sentence.

Appellant raises one issue on appeal: whether the Government's 166-day post-trial delay entitles Appellant to appropriate relief. We find no prejudicial error and the post-trial delay has not rendered the findings or sentence inappropriate. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, we affirm the findings and sentence.

## I. BACKGROUND

Appellant's convictions stem from a course of conduct between June 2023 and November 2023, in which Appellant wrongfully used cocaine, was absent without leave, and failed to obey his commander's order to remain within the confines of the base.

Appellant's court-martial convened on 7 December 2023 at 1351 hours and adjourned the same day at 1719 hours. It was not until 21 May 2024—166 days following the completion of Appellant's court-martial—that the three-volume record of trial, to include a 120-page trial transcript, two prosecution exhibits, zero defense exhibits, and three appellate exhibits, was assembled and docketed with this court for appellate review.

---

[1] Unless otherwise noted, references in this opinion to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

[2] Pursuant to the plea agreement, five specifications of wrongful possession of a controlled substance, in violation of Article 112a, UCMJ, were withdrawn and dismissed with prejudice.

The post-trial chronologies, provided by the court reporter and the base legal office,[3] establish the following timeline of pertinent events in the post-trial process. The court reporter began transcription on 15 December 2023, eight days after the sentence was adjudged. Between 15 December 2023 and 22 December 2023, the court reporter spent a total of five days on transcription and reviewing the exhibits. Between 26 December 2023 and 16 February 2024, the court reporter was out on leave for two weeks, worked on another case for three days, spent one week on out-processing for a permanent change of station, and attended a month-long course. Upon returning from the course on 19 February 2024, the court reporter spent an additional eight days completing and reviewing the 120-page transcript, and then forwarded the transcript to counsel for their review on 29 February 2024. After receiving counsels' edits, the court reporter certified the transcript as complete on 6 March 2024, 90 days after the sentence was adjudged.

The base legal office began the process of assembling the record of trial on 15 January 2024, 39 days after the sentence was adjudged. Over the next three months, the base legal office spent at least 16 duty days assembling the three-volume record of trial, which was completed by 15 April 2024, 130 days after the sentence was adjudged. Between 19 April 2024 and 23 April 2024, Appellant failed to appear on three separate occasions at the appointed time to receive service of the record of trial. On 26 April 2024, the record of trial was successfully served on Appellant, and on 30 April 2024—on day 145—the record of trial was mailed to the designated office for appellate review. The record of trial was then docketed with this court on 21 May 2024, 166 days after the sentence was adjudged.

## II. DISCUSSION

### A. Law

"[C]onvicted servicemembers have a due process right to timely review and appeal of [their] courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). We review the question of whether an appellant's due process rights are violated because of post-trial delay de novo. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citation omitted).

---

[3] The following timeline comes from three documents: (1) the court reporter chronology that was included in the original record of trial; (2) the base legal office's memorandum for record that was included in the original record of trial; and (3) a declaration prepared by the court reporter that we attached to the record of trial upon the Government's unopposed motion.

In a due process analysis, a presumption of unreasonable delay arises when a case is not docketed with this court within 150 days from sentencing. *Livak*, 80 M.J. at 633 (citation omitted). This threshold, adapted from the standards set forth in *Moreno*, "is not, by any means, a particularly onerous processing goal." *United Sates v. Gay*, 74 M.J. 736, 743–44 (A.F. Ct. Crim. App. 2015). "In fact, a delay in this phase of post-trial processing is 'the least defensible of all and worthy of the least patience. . . . [T]his stage involves no discretion or judgment; and, unlike an appellate court's consideration of an appeal, this stage involves no complex legal or factual issues or weighing of policy considerations.'" *Id.* (quoting *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990)).

A presumptively unreasonable delay triggers an analysis of the four factors in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). While a presumptively unreasonable delay satisfies the first factor, the Government "can rebut the presumption by showing the delay was not unreasonable." *Id.* at 142. "Assessing the fourth factor of prejudice, we consider the interests of prevention of oppressive incarceration pending appeal; minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and limitation of the possibility that . . . grounds for appeal, and . . . defenses in case of reversal and retrial, might be impaired." *United States v. Cabuhat*, 83 M.J. 755, 773 (A.F. Ct. Crim. App. 2023) (citing *Moreno*, 68 M.J. at 138–39). In the absence of such prejudice, a due process violation exists only when "the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Even in the absence of a due process violation, we "may provide appropriate relief if [Appellant] demonstrates . . . excessive delay in the processing of the court-martial after the judgment was entered into the record." Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2). This authority under Article 66(d)(2), UCMJ, to grant relief for excessive post-trial delay does not require a showing of "actual prejudice" within the meaning of Article 59(a), UCMJ. *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (citation omitted).[4] The essential inquiry is whether, given the post-trial delay, the sentence "remains appropriate[ ] in light of all circumstances." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006) (citation omitted).

---

[4] The court in *Tardif* applied a version of Article 66, UCMJ, which pertinent language is substantially similar to the 2019 *MCM*.

In determining whether the sentence remains appropriate in light of post-trial processing delay, we consider the following factors:

1. How long did the delay exceed the standards set forth in [*Moreno*]?

2. What reasons, if any, has the [G]overnment set forth for the delay? Is there any evidence of bad faith or gross indifference to the overall post-trial processing of this case?

3. Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, is there nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay?

4. Has the delay lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline?

5. Is there any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation?

6. Given the passage of time, can this court provide meaningful relief in this particular situation?

We consider no single factor dispositive, and a given case may reveal other appropriate considerations for this court in deciding whether post-trial delay has rendered an appellant's sentence inappropriate.

*Gay*, 74 M.J. at 744 (footnote omitted).

## B. Analysis

Appellant's case was not docketed with the court until 166 days after he was sentenced. Appellant contends he is entitled to sentence relief because the delay violated his due process right to speedy appellate review. Appellant also contends the delay renders his sentence inappropriate, warranting relief under Article 66(d)(2), UCMJ.

After careful consideration of the *Barker* factors, we conclude there is no due process violation. While the 166 days from sentencing to docketing is presumptively unreasonable because it exceeded the 150-day threshold, seven of those days are attributable to Appellant's failure to appear at the appointed time to receive service of the record of trial on three different occasions. We find no indication of actual bad faith on the part of any Government actors. Moreover, Appellant never made a demand for speedy post-trial processing and Appellant does not assert any specific prejudice from the delay. Finally, we do not find the delay to be "so egregious that tolerating it would adversely affect

the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362 (C.A.A.F. 2006).

Even in the absence of a due process violation, non-prejudicial delays may still warrant relief if the sentence no longer "remains appropriate[ ] in light of all circumstances." *Toohey*, 63 M.J. at 362. After considering the factors enumerated in *Gay*, we conclude sentence relief is not warranted.

While the delay did not egregiously exceed the *Livak* threshold, we find the circumstances of this case raise serious concerns. As we have noted, the court-martial lasted a mere three-and-a-half hours, yet the court reporter took 13 duty days over the course of almost three months to transcribe 120 pages. Further, the base legal office took 16 duty days over a course of three months to assemble the three-volume record of trial, which includes only five exhibits. It stretches credulity to believe such an inordinate amount of time was necessary to transcribe and assemble the record of trial under the circumstances of this case. While we understand the operational realities of a base legal office, and do not find any bad faith on the part of the government actors, we are nonetheless concerned about the general lack of urgency demonstrated.

This court recently addressed the issue of institutional neglect concerning timely post-trial processing, finding "a systemic problem" due to "errors in records of trial caus[ing] delays in appellate review." *United States v. Valentin-Andino*, No. ACM 40185 (f rev), 2024 CCA LEXIS 223, at *17–19 (A.F. Ct. Crim. App. 7 Jun. 2024) (unpub. op.) (summarizing remand of cases for post-trial processing errors and describing the trend as one that "happen[s] at an alarming frequency in the Air Force"), *rev. granted,* __ M.J. __, No. 24-0208/AF, 2024 CCA LEXIS 571 (C.A.A.F. 30 Sep. 2024). Although we find some evidence of a lack of urgency or indifference concerning timely post-trial processing in this particular case, and this court has noted that *errors* in records of trial have been a systemic problem indicating institutional neglect, *id.* at 17, we have not found that *delays* in transcribing and assembling the record have become an institutional problem. Moreover, there is no evidence of harm (either to Appellant or institutionally) caused by the delay in this particular case, nor has the delay lessened the disciplinary effect of any particular aspect of the sentence. *See Gay* 74 M.J. at 744. Accordingly, on balance, we find the *Gay* factors do not weigh in favor of sentence relief.

## III. CONCLUSION

As entered, the findings are correct in law, and the sentence is correct in law and fact, and no error materially prejudicial to the substantial rights of

Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court